Christopher A. Seeger
Seeger Weiss LLP
50 Challenger Road
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
Fax: (973) 584-9393
cseeger@seegerweiss.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, individually and on behalf of all other similarly situated shareholders of EXXON MOBIL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DARREN W. WOODS, MICHAEL J. ANGELAKIS, ANGELA F. BRALY, MARIA S. DREYFUS, JOHN D. HARRIS II, KAISA H. HIETALA, JOSEPH L. HOOLEY, STEVEN A. KANDARIAN, ALEXANDER A. KARSNER, LAWRENCE W. KELLNER, DINA POWELL MCCORMICK, JEFFREY W. UBBEN, and EXXON MOBIL CORPORATION<br><br>Defendants. | Civil Action No. __________<br><br>**<u>CLASS ACTION COMPLAINT</u>** |

Plaintiff City of Hollywood Police Officers' Retirement System, individually and on behalf of all other similarly situated shareholders, brings this action against the members (the "Director Defendants") of the Board of Directors

(the "Board") of Exxon Mobil Corporation ("Exxon" or the Company") (collectively with the Director Defendants, "Defendants") for breaching their fiduciary duties in connection with the adoption of a Retail Voting Program ("RVP") that violates federal law, unlawfully impairs the voting rights of Exxon's public shareholders, and constitutes an unlawful entrenchment device meant to perpetuate Defendants' control over the Company. Plaintiff also seeks an injunction against Exxon directly to prevent the Company from proceeding with this unlawful solicitation.

Plaintiff's allegations are based upon its knowledge as to itself and as to all other matters upon information and belief, including the investigation conducted by its undersigned attorneys, a review of public information, news reports, and documents filed with the U.S. Securities and Exchange Commission ("SEC").

## INTRODUCTION

1. On September 15, 2025, Exxon announced that it would commence a new program that would ask the Company's retail investor shareholders to join a new "Retail Voting Program" (the "RVP") under which shareholders' shares would be voted automatically in alignment with the Board's recommendations. The Board's adoption of the RVP is just the latest move in the Company's efforts to quash voices of shareholders who have not uniformly supported the Board's decisions. By attempting to weaponize a largely disengaged body of retail

shareholders, however, the RVP affirmatively violates federal law, and constitutes both an unlawful entrenchment device and a breach of fiduciary duty under New Jersey law.

2. Under the RVP, retail investors (and only retail investors) are asked to give the Company the ability to vote their shares in perpetuity in favor of management's recommendations either (a) on all matters, or (b) on all matters except director elections or any acquisition, merger or divestiture transaction that, under applicable state law or stock exchange rules, requires approval of the Company's shareholders. Supposedly, shareholders who "opt-in" to the program may "opt-out" at any time.

3. On September 17, 2025, Exxon filed a proxy solicitation on Schedule 14A specifically designated as "Soliciting Material under § 240.14a-12" (the "Solicitation"). The Solicitation "invit[ed] [retail shareholders] to opt in to a new Retail Voting Program to vote your ExxonMobil shares in line with our Board's recommendations" and provided a website link or a QR code that would open a website to allow a shareholder to opt-in to the program.

4. As set forth below, the Solicitation violates nearly every substantive requirement for proxy solicitations set forth in 17 C.F.R. §§ 240.14a-3 to 240.14a-15 (*see infra* ¶¶ 33 - 48).

5. By authorizing the RVP in violation of federal law, the Director Defendants have unlawfully impaired the voting rights not only of Exxon's shareholders who opt-in to the program based on inadequate disclosures, but also of Exxon's shareholders who either are not eligible or choose not to opt-in, but whose votes would be diluted through the votes of illegally solicited proxies. By unlawfully impairing the voting franchise of Exxon's public shareholders, the Director Defendants breached their fiduciary duties.

6. The RVP also is designed and intended to quash shareholder dissent and to perpetuate the Director Defendants' control over the Company. For years, Exxon has gone to great lengths to oppose shareholder initiatives that advocate change to corporate policies and practices adopted by the Board. Despite the Board's efforts to throttle shareholder activism, shareholders nonetheless prevailed in a landmark contested proxy contest that saw three new directors elected to the Board, and between 2015 and 2023, shareholder proposals concerning corporate governance and environmental issues routinely earned substantial, and in many instances majority, support from voting shareholders.

7. The RVP is intended to stifle shareholder dissent and to perpetuate Board control free of what the Director Defendants perceive as a threat to their job security from troublesome investors. As such, it is an illegal entrenching device the adoption of which violates the Director Defendants' fiduciary duty of loyalty.

8. Plaintiff City of Hollywood Police Officers' Retirement System, on behalf of itself and other similarly situated shareholders, brings this Complaint seeking declaratory and injunctive relief against: (i) the Defendants' deliberate effort to unlawfully impair the voting rights of Exxon's public shareholders, and (ii) Defendants' requiring the dismantling of the RVP and preventing Defendants from unlawfully soliciting any proxies through that program.

9. A prompt adjudication of this matter is essential to protect and restore the shareholder franchise.

## JURISDICTION

10. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

## VENUE

11. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 in that the Defendant is a New Jersey corporation.

## PARTIES

12. Plaintiff City of Hollywood Police Officers' Retirement System is an Exxon shareholder, and has been an Exxon shareholder at all material times alleged in this Complaint.

13. Defendant Darren W. Woods is the Company's CEO and Executive Chair. He has been a director since 2016.

14. Defendant Michael J. Angelakis is a director of the Company and has been a director since 2021.

15. Defendant Angela F. Braly is a director of the Company and has been a director since 2016.

16. Defendant Maria S. Dreyfus is a director of the Company and has been a director since 2024.

17. Defendant John D. Harris II is a director of the Company and has been a director since 2023.

18. Defendant Kaisa H. Hietala is a director of the Company and has been a director since 2021.

19. Defendant Joseph L. Hooley is a director of the Company and has been a director since 2020.

20. Defendant Steven A. Kandarian is a director of the Company and has been a director since 2018.

21. Defendant Alexander A. Karsner is a director of the Company and has been a director since 2021.

22. Defendant Lawrence W. Kellner is a director of the Company and has been a director since 2023.

23. Defendant Dina Powell McCormick is a director of the Company and has been a director since 2024.

24. Defendant Jeffrey W. Ubben is a director of the Company and has been a director since 2021.

25. Defendant Exxon is a New Jersey corporation with its registered agent at 830 Bear Tavern Road, West Trenton, New Jersey 08628-1020.

## FACTUAL ALLEGATIONS

### A. EXXON'S BOARD HAS LONG FOUGHT AGAINST SHAREHOLDER INITIATIVES ADVOCATING FOR CHANGES IN CORPORATE POLICIES AND PRACTICES

26. Exxon is a global oil, gas, and petrochemical company that has been in operation for over 140 years. The Company operates its facilities or markets its products all over the world and conducts oil and gas exploration on six continents.

27. Exxon shareholders have expressed sustained interest in engaging with the Company to address environmental and climate change issues that are relevant to Exxon's operations. Between 2015 and 2020, fourteen shareholder proposals were included in the Company's proxy filings addressing various environmental and climate change issues, including the Company's response to climate change and expansion of Exxon's portfolio in renewable resources. Indeed, in 2017, a shareholder proposal requesting a report on the impact of technological advances and global climate change policies on the Company's portfolio and financial results received 62.1% shareholder support.

28. Shareholders' various campaigns relating to environmental issues eventually culminated in the 2021 proxy contest in which activist investor Engine No. 1 sought four board seats in order to address concerns with Exxon's environmental impacts. Exxon opposed the 2021 proxy contest at considerable expense, but shareholders ultimately elected three new directors to Exxon's board.

29. The 2021 proxy contest stands as a testament to the success of shareholder engagement, as the Company and activist shareholders submitted over 250 proxy solicitation communications between December 2020 and May 2021 to persuade voters to their cause.

30. Having lost at the ballot box, Exxon's Board turned to the courts to stifle shareholder engagement. In 2024, Exxon sued shareholders Arjuna Capital and Follow This in order to keep their emission-reduction target proposal off the Company's proxy, despite having defeated similar proposals in prior years. Faced with the expense of litigation, these shareholders ultimately withdrew their proposals for the 2024 Exxon proxy despite having easily satisfied the minimum voting support requirements for re-introduction of the proposal under the proxy rules.

**B. EXXON ADOPTS THE RETAIL VOTING PROGRAM**

31. Now, in 2025, Exxon takes its fight against activist shareholders to a new level, purporting to create a first of its kind automatic voting program under

which Exxon will have the authority to automatically vote retail shareholders' shares in alignment with the Board's recommendations.

32. On September 15, 2025, Exxon requested the SEC's Division of Corporation Finance to issue a letter granting no-action relief for the Company's proposed RVP.[1] Exxon described the RVP as allowing for "a standing voting instruction whereby, on an ongoing basis, [the] votes [of shareholders who opt-in to the program] would be cast as recommended by the [Board]."[2] Thus, the RVP is designed specifically to allow retail shareholders to grant their proxy to the Company on a perpetual basis to be voted in accordance with the Board's recommendations.

33. In submitting its request for no-action relief, the Company specifically *did not* seek the Staff's opinion regarding whether the RVP constituted a "solicitation", but conceded that the provisions of Rule 14a-2(a)(1) would apply:

> The Company is not seeking no-action relief in this letter regarding whether the Retail Voting Program involves the 'solicitation' of proxies, as defined in Rule 14a-1(l). …[3]

34. Although the RVP represented an extraordinary departure from standard voting procedure, and had never been instituted or even publicly

---

[1] A copy of Exxon's no-action request is attached as Exhibit A.

[2] *Id.*

[3] Exhibit A at 4, n. 4.

considered by any publicly traded corporation, in an *extraordinary* display of alacrity, the Staff granted Exxon's request for no-action relief *the very same day.*[4]

> Based on the facts and represented presented in your letter the Division of Corporation Finance will not recommend enforcement action to the Commission under Exchange Action Rule 14a-4(d)(2) or Rule 14a-4(d)(3) if Exxon Mobil Corporation implements the Retail Voting Program as described in your incoming letter.[5]

35. On September 17, 2025, Exxon filed with the SEC on Form DEFA 14A copies of three letters through which retail shareholders would be asked to opt-in to the RVP: a "Beneficial Email," a "Registered Email," and a "Beneficial Letter."[6]

36. Each of the published forms of communications provided a means by which (in the Beneficial Email and the Registered Email, an electronic link; and in the Beneficial Letter, a scannable QR code) shareholders could access a website through which shareholders could opt-in to the RVP:

---

[4] The Staff's lightning-fast response to Exxon's request came just over two months after a federal court held that the SEC itself exceeded its authority by adopting a rule designed to impede the ability proxy advisory firms to communicate with their clients (which are typically institutional investors). In *Institutional Shareholder Services, Inc. v Securities and Exchange Commission*, 142 F.4th 757 (D.C. Cir. 2025), the Court held that a 2020 amendment to Rule 14a-1(l), specifically subsection (1)(iii), which extended the definition of "solicitation" to include advice from proxy advisory firms, is unconstitutional.

[5] A copy of the Staff's no-action response is attached as Exhibit B.

[6] Exhibit C.



**Beneficial Letter**

Hextone

Hextone
P.O. Box 1310
Brentwood, NY 11717

Irena Smith
15 Main Street
Anytown, NY 11423-1325

**Opt in now**

Scan the code with your phone to enroll, or visit the link below.

**https://qa.tinybfs.com/t/aJLMhy**

ExxonMobil

ExxonMobil investor message:
Account Number ********1234

**A new, easy way to vote**

When you invested in ExxonMobil, you took ownership in a historic company. Today, we are inviting you to opt in to a new Retail Voting Program to vote your ExxonMobil shares in line with our Board's recommendations.

It's another way to ensure your voice is heard.

**What you can expect when you enroll:**

- Save time, align your vote with the Board's recommendations at each shareholder meeting
- Change your vote anytime—override a vote or opt out for future meetings

To activate this no-cost service, simply scan the QR code at the top of this letter with your smartphone camera or go to the website provided.

Thank you for being a valued ExxonMobil shareholder.

Investor Relations | Exxon Mobil Corporation | Retail.Shareholder@exxonmobil.com

*The ExxonMobil Retail Voting Program described herein is neither endorsed nor solicited by your broker and its agents.*

PXXXXX

37. Once on the website, under the RVP retail shareholders are asked to enter into a "voting consent agreement," the terms of which state:

**Terms of the voting consent agreement**

By making a selection, you are agreeing to provide a standing instruction to ExxonMobil for any eligible shares directly held in your name or held in “street name” but beneficially owned by you to be voted at all future shareholders' meetings consistent with the recommendations of ExxonMobil's Board of Directors as to each type of proposal indicated by you in “Selection 1 - All Matters” or “Selection 2 - All Matters Except Certain Specified Matters”. This standing instruction will remain effective and in place for every shareholder meeting until you cancel the instruction, and will be communicated to your bank, broker or plan administrator (if your shares are held through them).

38. Thus, by enrolling in the RVP, retail shareholders are providing their consent and authorization for Exxon’s Board to vote the shareholder’s shares in alignment with the Board at all future shareholder meetings unless the shareholder affirmatively takes steps to cancel the voting instruction.

## C. THE RVP CONSTITUTES AN UNLAWFUL SOLICITATION

39. The RVP enrollment notice and website clearly constitute solicitations. SEC Rule 14a-1(l) defines “solicitation” as follows:

> (l) Solicitation
>
> (1) The terms ‘solicit’ and ‘solicitation’ include:
>
> (i) Any request for a proxy whether or not accompanied by or included in a form of proxy;
>
> (ii) Any request to execute or not execute, or to revoke, a proxy[.][7]

40. The solicitation materials filed by the Company were submitted as “Soliciting Material under § 240a-12,”[8] effectively conceding that the contemplated RVP notice to retail shareholders constitute solicitations under the applicable proxy rules.

[7] 17 C.F.R. § 240.14a-1(l).

[8] Exhibit C.

41. SEC Rule 14a-2 provides that, except as otherwise specified, the requirements set forth in Rules 14a-3 through 14a-15 "apply to every solicitation of a proxy with respect to securities registered pursuant to section 12 of the [Securities and Exchange] Act." Rules 14a-3 through 14a-15, in turn provide detailed disclosures and filing requirements that must be made in connection with any solicitation of proxies. The RVP communications violate nearly every such requirement.

42. *Rule 14a-3 Information to be furnished to securities holders.*

a. Subsection (a) requires proxy solicitations to be accompanied by a preliminary or definitive proxy statement. Subsection (b) requires any proxy solicitation in connection with an annual meeting in connection with the election of directors must be accompanied by or preceded by an annual financial report. Subsection (c) requires that the report required by the rule be filed with the SEC not later than the date it is first sent or given to shareholders.

b. The RVP communications violate Rule 14a-3 because the Company did not provide any preliminary or definitive proxy materials disclosing any items to be considered, and necessarily could not, by definition, provide the required financial reports for any future meetings for which proxies are being solicited.

43. *Rule 14a-4 Requirements as to proxy.*

a. Subsection (a) requires that a form of proxy shall indicate in bold-type whether the solicitation is being made on behalf of the Board or the identity on whose behalf the solicitation is made, a designated blank space for dating the proxy card, and "shall identify clearly and impartially each separate matter intended to be acted upon …". Subsection (b) requires shareholders solicited to be provided means to approve, disapprove or abstain with respect to each item to be considered and provides specific provisions with respect to the election of directors. Subsection (d) provides that:

> "No proxy shall confer authority:
>
> …
>
> (2) To vote at any annual meeting other than the next annual meeting (or any adjournment thereof) to be held after the date on which the proxy statement and form of proxy are first sent or given to security holders.
>
> (3) To vote with respect to more than one meeting (and any adjournment thereof) or more than one consent solicitation.
>
> (4) To consent to or authorize any action other than the action proposed to be taken in the proxy statement, or matters referred to in paragraph (c) of this section.

b. The RVP violates Rule 14a-4 because the mailing (i) does not state in bold-type that the solicitation is being made by the Board, (ii) does not "identify clearly and impartially each separate matter to be acted upon", because it seeks authority to cast votes in favor of whatever proposals may be submitted and

recommended by the Board at any future meeting, (iii) does not provide a means by which security holders can oppose or abstain from any item to be considered, and (iv) seeks authority to vote proxies in more than one meeting and is not limited to the annual meeting after the Solicitation was first given to security holders.

c. The RVP also violates Rule 14a-4(d)'s strict time limitations on proxy validity, thereby eviscerating the Rule's "fresh and informed consent" requirements. Shareholder solicitations must be specific and contemporaneous. Rule 14a-4(d) thus protects and enhances shareholder franchise by calling for shareholders to provide active and deliberate consent in response to current and robust disclosures. The RVP subverts both the plain language and the purpose of this important Rule. The RVP gives management a blank check; it grants perpetual and indefinite voting authority to management to vote shares however it chooses for meetings ***far beyond*** those following the solicitation and for ***far more*** than one meeting. Because the RVP allows Exxon management to ensure that management-friendly votes are automatically cast at subsequent meetings, the RVP undermines the incentives for robust disclosure and protections against management entrenchment that are at the heart of Rule 14a-4's time and scope limitations on proxy validity. That the authority granted to management under the RVP can be cancelled – just as it could be with *any* proxy – does not rehabilitate this plainly illegal program. The Rule puts the onus on management to secure

active and informed consent, not on shareholders to exercise their right to revoke their indefinite proxy. The RVP thus turns the Rule on its head by substituting inertia for the system of informed and current shareholder participation enshrined by the Rule.

44. *Rule 14a-5 Presentation of information in proxy statement*

a. Subsection (a) requires, *inter alia*, that "[t]he information included in the proxy statement shall be clearly presented and the statements made shall be divided into groups according to subject matter and the various groups of statements shall be preceded by appropriate headings. Subsection (b) provides that information required to be disclosed that necessarily must be determined in the future may be stated in terms of present knowledge and intention. Subsection (b) further provides that, "[t]o the extent practicable, the authority conferred concerning each such matter shall be confined within limits reasonably related to the need for discretionary authority. Subject to the foregoing, information which is not known to the persons on whose behalf the solicitation is to be made and which it is not reasonably within the power of such persons to ascertain or precure may be omitted, if a brief statement of the circumstances rendering such information unavailable is made." Subsection (e) requires that "[a]ll proxy statements shall disclose, under an appropriate caption, the following dates": (1) the deadline for submitting shareholder proposals under Rule 14a-8; (2) the date after which notice

of a shareholder proposal submitted outside of the Rule 14a-8 process will be considered untimely, (3) the deadline for submitting nominees for inclusion in the registrant's proxy statement and an appropriate form of proxy, and (4) the deadline for providing notice of a solicitation in support of director nominees other than those recommended by the registrant at the next annual meeting.

b. The RVP violates Rule 14a-5 because (1) it does not provide *any* information regarding the matter to be voted upon at the next or any subsequent meeting for which the Solicitation seeks proxy voting power; (2) it does not provide any information regarding the substance of any proposals that may be the subject of the voting power requested by the Solicitation; and (3) it provides none of the dates required by subsection (e).

45. *Rule 14a-6 Filing requirements.*

a. Rule 14a-6 provides filing requirements for preliminary and definitive proxy statements.

b. The RVP violates Rule 14a-6 because it purports to circumvent the requirement of concurrently publishing any proxy statement required by the SEC's rules promulgated under Section 14A at all by soliciting proxy voting power in the absence of any of the disclosures required under these Rules 14a-3 through 14a-15.

46. *Rule 14a-9 False or misleading statements.*

a. Subsection (a) provides that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

b. The RVP violates Rule 14a-9 because it does not provide any information whatsoever regarding the specific matters on which voting authority is being solicited.

47. *Rule 14a-10 Prohibition of certain solicitations.*

a. Rule 14a-10 provides that no person making a solicitation shall solicit "(a) Any undated or postdated proxy; or (b) Any proxy which provides that it shall be deemed to be dated as of a date subsequent to the date on which it is signed by the security holder."

b. The RVP violates Rule 14a-10 because it purports to seek authorization to vote proxies on some undisclosed dates in the future in connection

with meetings that have not been scheduled, and purports to grant authorization to vote proxies subsequent to the date on which it is signed by the security holder.

48. *Rule 14a-12 Solicitation before furnishing a proxy statement.*

a. Rule 14a-12(a) provides that a solicitation may be made before furnishing security holders with a proxy statement meeting the requirements of Rule 14a-3(a) if (1) each written communication includes (i) the identity of the participants in the solicitation and a description of their direct or indirect interests, or a prominent legend advising security holders where they can obtain that information; and (ii) a legend advising proxy holders to read the proxy statement when it is available because it contains important information.

b. The RVP violates Rule 14a-12 because it does not prominently and clearly (1) identify the participants[9] to the solicitation or a description of their direct or indirect interests (because, of course, it does not identify the subject matter with respect to which proxy voting authority is sought), or (2) instruct shareholders to review any definitive proxy statement or even provide dates on which such definitive proxy statements may be available. To the extent Exxon is relying on Rule 14a-12 in commencing the RVP, the RVP enrollment form violates

[9] "Participant" as it is used in Rule 14a-12 includes, among others, the Company's directors and any director nominees. How could anyone truthfully disclose today who the Company's directors will be at arbitrary points in the future? Plaintiff is left to wonder whether the Director Defendants understand the existence of the RVP to imply, for purposes of the identification requirement of Rule 14a-12, that they will remain Company directors in perpetuity.

the rule because it requests the shareholders' consent or authorization, but fails to provide a definitive proxy statement concurrently with that request. What's more, nothing in the text of Rule 14a-12 states, suggests, or otherwise implies that it is intended to provide the Director Defendants the right to exercise a perpetual, plenary vote on behalf of thousands of retail shareholders; to conclude otherwise would transform Rule 14a-12 into a gaping hole that would swallow the entire proxy voting disclosure apparatus.

### D. THE DIRECTOR DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES BY ESTABLISHING THE RETAIL VOTING PROGRAM TO ENTRENCH THEMSELVES AND PERPETUATE THEIR CONTROL OVER CORPORATE POLICIES AND PRACTICES

49. In addition to violating the SEC's proxy solicitation rules as set forth above, the Director Defendants breached their fiduciary duties by establishing the RVP in order to entrench and perpetuate their control over director elections as well as corporate policies and practices.

50. In announcing the RVP, Exxon explained that the purpose of the program is to blunt the impact of votes legally cast by institutional investors because historically large numbers of retail investors have chosen not to vote their shares. The Company purported to justify its attempt to undermine the impact of legally voted shares as an effort to preserve what the Board characterizes as "shareholder value." But the Company's purported justification reveals nothing more than a difference of opinion between the Defendants and certain shareholders

who, consistent with New Jersey and federal law, seek to have their voices heard. This right to be heard, and in particular the right to dissent from recommendations by the Board, is at the very heart of the shareholder franchise.

51. The RVP, therefore, represents nothing but a blatant power grab through which the Director Defendants seek to weaponize retail shareholder apathy by sock-puppeting retail shareholders' voting discretion without providing the required disclosures under federal law, in order to crush the voting impact of security holders who read the proxy statements, participate in shareholder democracy, and legally vote their shares. Defendants' desire to speak for retail shareholders in perpetuity instead of attempting to address retail shareholder apathy by stepping up good faith engagement speaks volumes. The RVP is a stark attempt to solidify the Director Defendants' control over the Company, squelch dissent, and eliminate the influence of what the Director Defendants perceive to be annoying minority shareholders.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2) and (b)(3) on behalf of a Class, consisting of all Exxon shareholders who held Exxon shares during the Class Period, excluding Defendants and the Court or any employees of the Court. As used herein, the term "Class Period" means the time beginning not later than September 15, 2025 (or

such earlier date that disclosure or solicitation concerning the Exxon RVP was made) and continuing until Exxon takes appropriate corrective action and terminates the RVP.

53. The members of the Class are so numerous that joinder of all members is impracticable. As of January 31, 2025, Exxon had 4,339,143,313 shares of common stock outstanding. Plaintiff believes that there are at least thousands of members in the proposed Class; as Exxon has admitted, nearly 40% of Exxon shares are held by retail investors. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions.

54. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law and in breach of their fiduciary duty that is complained of herein.

55. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and corporate governance litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. Whether the Company's DEFA 14A announcing the creation of the RVP was a solicitation within the meaning of the proxy rules;

b. Whether the Company's communications to shareholders seeking enrollment in the RVP are solicitations within the meaning of the proxy rules;

c. Whether the Company's DEFA 14A announcing the creation of the RVP and/or communications with shareholders seeking enrollment in the RVP violate the proxy rules;

d. Whether the Defendants breached their fiduciary duties to Plaintiff and the other members of the Class by authorizing the filing of unlawful proxy solicitations;

e. Whether the Defendants breached their fiduciary duties to Plaintiff and the other members of the Class by adopting, implementing and maintaining the RVP;

f. Whether Plaintiff and the Class have been or will be harmed by the Defendants' conduct;

g. Whether Plaintiff and the other members of the Class are entitled to declaratory and injunctive relief as a result of breaches of fiduciary duties.

57. There are no substantial individual questions among Class members on the merits of this action.

58. Plaintiff has been injured by the alleged breaches of fiduciary duties and is committed to fairly, adequately and vigorously representing and protecting the interests of Class members.

59. Neither Plaintiff, nor its counsel, have any interests that would cause them to refrain from vigorously pursuing this action.

60. Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

61. Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final

injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

62. In the alternative, class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class and because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

63. There will be no difficulty in the management of this action as a class action.

**COUNT I**
**(Direct Claim for Breach of Fiduciary Duty against Director Defendants)**

64. Plaintiff repeats and re-alleges all of the preceding allegations as if fully set forth herein.

65. Exxon securities are registered pursuant to section 12 of the Securities Exchange Act.

66. The invitation to enroll in the RVP requests that shareholders authorize the Board to vote their shares in accordance with the recommendation of the Board and thus constitutes a "request for a proxy" within the meaning of "solicitation" as defined by 17 CFR § 240.14a-1(l).

67. Per C.F.R. § 240.14a–2, every solicitation of a proxy by Exxon regarding those securities must comply with the requirements promulgated under 17 CFR §§ 240.14a–3 through 240.14a–15.

68. As set forth above (¶¶ 33 - 48) RVP solicitation materials violate federal law by failing to comply with numerous requirements set forth in 17 CFR §§ 240.14a–3 through 240.14a–12.

69. By soliciting votes in violation of federal law, Defendants have and will continue to unlawfully impair the voting rights of both those shareholders who "opt-in" to the voting program based on inadequate disclosures, and those shareholders who "opt-out" of the voting program or who otherwise do not tender their proxy by diluting the voting power of properly voted shares with votes cast by the Board based on illegally solicited proxies.

70. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
## (Direct Claim for Breach of Fiduciary Duty against the Director Defendants)

71. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

72. As described above (¶¶ 49 - 51), Defendants adopted the RVP for the express purpose of quashing dissent and preventing the free exercise of the voting franchise.

73. Defendants adopted the RVP for the purposes of perpetuating their own reelection and perpetual control of the Board, and the Board's control of the corporate policies and practices free of dissent from shareholders who would seek to remove directors from office or oppose the election of director candidates recommended by incumbent Board members, or who would seek the adoption of corporate policies or practices that run contrary to Board recommendations.

74. The RVP was adopted with the purpose, and has the effect of, separating the shareholders from exercising their voting rights with full cognizance of the nature of the vote, in direct contravention with the letter and the spirit of the Securities Exchange Act.

75. The RVP has the effect of unlawfully appropriating the votes of the retail shareholders and impairing the shareholder franchise.

76. The RVP was adopted with the purpose, and has the effect of, inequitably entrenching the Director Defendants.

77. The adoption of the RVP as well as its continued maintenance constitute breaches of each Director Defendant's fiduciary duty of loyalty.

78. The invitation to enroll in the RVP constitutes a breach of the fiduciary duty of loyalty in the form of an unlawful solicitation.

79. The continued maintenance of the RVP causes all shareholders not enrolled in the RVP imminent and irreparable harm as it inequitably chills and even precludes the fair exercise of the Exxon shareholder franchise.

80. Plaintiff and the Class have no adequate remedy at law.

**COUNT III**
**(Claim for Injunctive Relief against Defendant Exxon Mobil Corporation)**

81. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

82. The RVP communication materials constitute a "solicitation" under the federal securities laws.

83. As set forth above (¶¶ 33 - 48), the RVP communication materials do not comply with the disclosure requirements set forth in 17 CFR §§ 240.14a–3 through 240.14a–12.

84. The RVP was adopted by Defendants to perpetuate their reelection, and to unlawfully impair the voting franchise of Exxon's public shareholders.

85. Plaintiff and the Class have been and will continue to be injured by the RVP until and unless it is rescinded and cancelled.

86. Plaintiff and the Class have no adequate remedy at law.

## CLAIM FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court orders the following relief:

A. Certifying the Class.

B. Entering judgment in favor of the Class against Defendants;

C. Declaring and decreeing that the RVP is unlawful under Rule 14a of Section 240 Title 17 of the Code of Federal Regulations;

D. Declaring and decreeing that the invitation to enroll in the RVP constitutes an unlawful solicitation within the meaning of the Rule 14a of Title 17 of Section 240 of the Code of Federal Regulations;

E. Declaring and decreeing that the Director Defendants have each breached their fiduciary duty of loyalty by impairing Plaintiff's shareholder voting rights through the implementing the RVP;

F. Declaring and decreeing that the Director Defendants have each breached their fiduciary duty of loyalty by causing the Company to commence an unlawful solicitation;

G. Temporarily, preliminarily, and permanently enjoining the continued operation of the RVP;

H. Awarding Plaintiff its attorneys' fees and costs; and

I. Granting such other relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

SEEGER WEISS LLP

By: *__/s/ Christopher A. Seeger__*
Christopher A. Seeger

55 Challenger Road
Ridgefield Park, NJ 07660
(973) 639-9100

*Attorneys for Plaintiff City of Hollywood Police Officers' Retirement System*

Dated: October 14, 2025

Of Counsel

Michael J. Barry (041551993)
William G. Passannante II (*pro hac vice forthcoming*)
Edward M. Lilly (*pro hac vice forthcoming*)
GRANT & EISENHOFER
123 Justison Street, Suite 700
Wilmington, DE 19801
(302) 622-7000